SALMER *v.* HICKS.

1. TRIAL—EVIDENCE—PROCEEDINGS IN JUSTICE'S COURT.

In an action for wages by a farm hand, cross-examination of defendant as to proceedings in the justice's court is largely a matter of discretion with the trial court, where defendant stated he had not been allowed by plaintiff's counsel to take the stand and refute testimony given by plaintiff; but where he afterwards admitted that neither court nor counsel prevented his taking the stand, it was error for the court to allow the justice to testify to the same matter, which did not go to prove or disprove any issue on trial, but only tended to divert the attention of the jury to an immaterial issue, and confuse it with the real question, which was the agreement as to plaintiff's employment, and what, if anything, was yet due to him upon it.

2. SAME.

While there was no direct testimony as to the result in justice's court, the prominence given the proceedings in that court indirectly indicated who appealed and why, and this, in connection with an expression of personal views by the court as to the statutory right of appeal, which tended to shadow the defense with a prejudicial inference, militated against the exercise of an unbiased judgment, and resulted in prejudicial error.

3. DAMAGES—EVIDENCE—EXCESSIVE VERDICT.

A judgment for the full amount claimed in the bill of particulars, which is not warranted by plaintiff's evidence, is excessive.

Error to Saginaw; Gage, J. Submitted June 21, 1915. (Docket No. 83.) Decided September 29, 1915.

Assumpsit by John Salmer against George J. Hicks in justice's court for an amount claimed to be due plaintiff for wages. From a judgment for plaintiff defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*Russell B. Thayer,* for appellant.

*Snow & Snow,* for appellee.

STEERE, J. Defendant owns and operates a large
farm near the city of Saginaw, upon which he main-
tains a dairy, selling and delivering milk and cream
to customers in the city. Early in January, 1913, de-
fendant hired plaintiff to work upon this place as a
farm hand at $45 per month and house rent free; he,
being a married man, to live upon the place in the
house furnished him and board himself. He remained
in defendant's employ from January 7 to July 8, 1913.
Whether he quit of his own accord, or was discharged,
is in dispute, and a material issue of the case. When
he left, a disagreement arose over wages yet due him,
resulting in his commencing this action in a justice's
court of Saginaw county the following day. He sub-
sequently recovered a judgment, and defendant re-
moved the case by appeal to the circuit court of said
county, where a trial by jury resulted in a verdict and
judgment in favor of plaintiff for $166.85, being the
full amount claimed under his bill of particulars, which
is as follows:

| | |
|---|---:|
| Money due on work held back | $20.00 |
| Three weeks' wages | 52.50 |
| 624 hours' work overtime, 15 cents per hour | 93.60 |
| 5 hours' work overtime | .75 |
| | $166.85 |

A motion by defendant for a new trial, upon the
ground that the verdict is unsupported by and against
the great weight of evidence, was denied. Defendant's
assignments of error are directed against the refusal
to grant a new trial, certain rulings upon evidence,
and parts of the charge given by the court. The case
was primarily, and almost entirely, one of disputed
facts, with no serious questions of law involved, except
as introduced into the case along the border line of

doubtful testimony, in the cross-examination of defendant as to justice's court proceedings in the case. Counsel for defendant urge that this portion of the cross-examination was incompetent and prejudicial.

It appears that upon trial of the case in justice's court defendant was not represented by counsel, and, without taking the stand himself, undertook to conduct his own defense, opposed by the counsel who cross-examined him in the circuit. The cross-examination upon this subject occupies 6½ pages of the record, beginning with, "The summons was served upon you in this case, wasn't it?" and concluding with, "You got up and argued the case to the court, the same as I did?" This apparently recalled to defendant a somewhat unpleasant time, which he found it difficult to discuss with equanimity. Some of his impertinent and irresponsive replies to questions touching that event might well have been stricken out and checked with a reprimand, but, as followed up, led to uncomplimentary personalities between counsel and witness. After counsel had asked if the summons in the case was served upon defendant and received an affirmative answer, he proceeded to interrogate him as to the number of times he got the case adjourned, what the pleadings were, and his knowledge of the issue, asking, amongst other questions, if witness did not see the bill of particulars in justice's court. Upon defendant replying that he did not, the following occurred upon that subject:

"*Q.* You say you didn't see this paper? It appears to be the bill of particulars.

"*A.* Yes; you refused to show me that in court before Justice Clements; you said you didn't have to.

"*Q.* Don't you know you are telling something that is false?

"*A.* No; I know I can tell the truth better than you can.

"*Q.* Don't you know that is the paper that was left with the justice of the peace?

"*A.* I don't know anything about that paper, because I never saw it until today, in Mr. Thayer's hands here.
"*Q.* Do you swear—
"*A.* I am swearing now.   *   *   *
"*Q.* You didn't have any attorney?
"*A.* No, sir; I didn't need any."

This was followed up by further questions, in answer to which defendant still denied seeing the paper, but admitted hearing it, or a similar paper, read in justice's court. After several evasive and impertinent replies, defendant squarely answered that in justice's court he heard plaintiff testify that he (defendant) agreed to pay him for extra services, or overtime, followed by these questions and answers, amongst others:

"*Q.* After you heard the testimony did you take the stand and give any testimony at all?
"*A.* I did not. There was no show for me to; you had the floor.   *   *   *
"*Q.* Did you take the stand and testify at all?
"*A.* You would not permit me to testify, and you would not permit me to talk half the time; you ruled the court that day.
"*Q.* Do you mean to tell me that?   *   *   *
"*A.* You told me to shut up several times through that case.
"*Q.* If I should say it now, it wouldn't be very much harm?
"*A.* Not a great deal. At times, when I wanted to speak, you got up and protested to the court that I was talking foolish; I wasn't talking law; no use to listen to such nonsense; and you did as you pleased.   *   *   *
"*Q.* Did I, or the court, or anybody else, refuse to allow you to take the stand, the same as Mr. Salmer and our witnesses?   *   *   *
"*A.* I don't know of there being any refusal."

During this line of examination defendant's counsel interposed several objections to it, without, however, taking exceptions, and at its conclusion moved to strike out as immaterial the testimony relative to proceedings in justice's court, which the court denied, saying:

"Your client has volunteered a good many things that reflect upon Mr. ————, and the justice as well. For that reason I permitted the counsel to ask him the questions he has with reference to what occurred there."

Later counsel for plaintiff called as a witness the justice before whom the case was first tried, and was permitted to show by him, against objection, that defendant was not prevented from taking the stand and testifying, and other matters in denial of defendant's charges of improper conduct by plaintiff's counsel, although the justice conceded, qualifiedly, that he "was boisterous and making a loud noise that day," which he testified was "what all the attorneys do as a rule."

Related to this alleged incompetent testimony as to the justice's court proceedings, and as indirectly emphasizing rather than relieving it, counsel for defendant also assign error on the following initiatory portion of the charge:

"While I think personally that the right to appeal from the justice's court to the circuit court should be limited to a certain amount, every man who has a lawsuit in the justice's court, considering himself aggrieved, has a perfect right under the law to file his affidavit, pay the costs there, and appeal the case to the circuit court, and have it tried over and over again. So the fact that it has been tried there is no concern of ours; it is for us to reach an independent conclusion in the case, in regard to the merits of it; and all the testimony that has been introduced here in regard to what transpired in the justice's court is purely immaterial to the issues in this case, and you should not consider it in any way, unless it in some way affects the testimony of some witness who has testified in the case. You will recall the way in which the matter crept in was some testimony which was given by one of the witnesses on the stand, and I felt that in order to clear the matter up it was proper for the other side to show what did transpire there. Of course, you have a right to take into consideration any claim made there,

or any testimony given there by witnesses, which differs from that given here, in order to determine what reliance you will place in the testimony of those witnesses, but outside of that it really has no bearing on this controversy."

Defendant did not take the stand in justice's court, and there was no proof of any claim or testimony by him, or any other witness, differing from that given in the circuit court, for the jury to consider. All that could be claimed for such testimony was that defendant had heard plaintiff testify to a matter of which he had knowledge, and did not take the stand to refute it. *Connell* v. *McNett*, 109 Mich. 329 (67 N. W. 344). These facts counsel for plaintiff had once distinctly proven without objection before he rested, and there had been no attempt by defendant to explain or deny them until plaintiff's counsel proceeded to renew the subject in cross-examination of defendant as to the justice's court proceedings. Defendant did not then deny those facts, although he did, by reckless and irresponsive retort, charge in extenuation that counsel opposed to him would not permit him to testify, or to "talk half the time," and "ruled the court that day." He finally admitted he did not know of any refusal. Just how far a cross-examination of this kind, drifting into a controversy between counsel and witness as to each other's veracity and propriety of conduct on a former trial of the case in justice's court, should be permitted to go, may be conceded as largely a matter of discretion with the trial court; but to permit other witnesses who were present in justice's court to be called and testify upon that issue is a more serious question.

It certainly was not material or competent to call the justice to vindicate himself. While defendant recklessly, and manifestly to his own prejudice, had by unseemly retort accused counsel of preventing him from testifying in his own behalf in justice's court,

he had contradicted himself and negatived his excuse by also testifying that he, in fact, had no knowledge of being refused the privilege of taking the stand, either by court or counsel. The material facts, for proof of which plaintiff's counsel claimed the right to go into the justice court proceedings, had not only been proven by him without dispute before the cross-examination began, but when it ended had been testified to by defendant himself. The testimony of the justice did not go to prove or disprove any issue on trial. Its tendency, beyond proving what was already admitted, was to divert the attention of the jury to an immaterial issue, and confuse it with the real question for them to decide, which was the agreement as to plaintiff's employment, and what, if anything, was yet due to him upon it. It is elemental that a jury, in trying an appeal case, may not consider or be influenced by the previous trial, and its result in the court from which appeal is taken, and it is therefore improper to show, or discuss before them, how the case was there decided, or who appealed it.

While there is no direct testimony by any witness in this case as to the result in justice's court, or who appealed, the prominence given the proceedings in that court in the trial under consideration inevitably, if indirectly, furnished to the most obtuse listener a clear understanding of who appealed and why. Although the court very properly cautioned the jury to dismiss from their minds all matters relating to the previous trial of the case, and seek to reach an independent conclusion, it was in connection with an expression of personal views as to the statutory right of appeal, which tended to shadow the defense with a prejudicial inference.

We are convinced that these prejudicial matters above referred to, in combination, had a tendency to and did influence the verdict of the jury and militate

against the exercise of an unbiased judgment, result-
ing in a failure to carefully confine their deliberations
to an analysis of the testimony bearing upon the real
issue in the case. A verdict for the entire amount
claimed in plaintiff's bill of particulars is not warrant-
ed by his own evidence.

It is undisputed that plaintiff was hired as a farm
hand at $45 a month, with a house in which to live,
and began work on January 7th. The only dispute
touching the terms of his hiring is over his claim that
his hours of labor were fixed, which defendant denies.
He testified that defendant was absent when he began
work, and at the foreman's request he worked over
hours; that the matter ran along in that way for about
2 weeks, when defendant returned, and plaintiff spoke
to him about it, "to see what the agreement was," and
defendant then promised him 15 cents an hour for
extra time, which was also denied. He was paid on
the 1st and 15th of each month by check, accompanied
by a slip stating what the check was for, and showing
any deductions made for coal or other items furnished
him for household use. No mention was made on these
slips of overtime, and plaintiff testifies nothing was
said about it when he received them with his checks.
He states that he worked at general farm work from
January 7th to June 6th, when he went on the milk
wagon to learn the route, and on June 13th started
delivering, continuing in that service until his em-
ployment terminated, receiving $50 per month and a
commission on bottles returned as wages. It is undis-
puted that when he went upon the milk route it was
agreed between him and defendant that should he de-
sire to leave, he would give 2 weeks' notice of his
intention to quit, and $20 should be held back from
his wages as security for performance, and, on the
other hand, in case defendant desired to discharge him
he should have 2 weeks' prior notice. No 2 weeks'

notice was given by either party before plaintiff left, and whether he quit voluntarily or was discharged was an issue in the case. He admitted on cross-examination that, with the exception of overtime claimed and the $20 held back, he had been paid in full for his services up to July 1, 1913. He claimed according to his bill of particulars, and recovered in full for, 4 hours daily at 15 cents per hour during 24 days in January, 28 days in February, 31 days in March, 30 days in April, 31 days in May, and 12 days in June, being every day from the time he commenced until he began driving the milk wagon. His own testimony discloses that a portion of the time for which he charges defendant was devoted to eating his meals. While he first testified that his regular wages were changed from $45 to $50 per month when he commenced upon the milk route on June 13th, on being confronted with statements and checks given him on pay days, he admitted, without explanation, that the terms of his hiring were changed on May 1st to the extent, at least, of an increase in his wages from $45 to $50 per month. In any aspect of the case, irrespective of the overwhelming testimony that he did not each day of the time claimed work the length of overtime claimed, this verdict was excessive, and in part unsupported by any competent testimony.

For the foregoing reasons, we are impelled to the conclusion that prejudicial error is manifest in the record of this trial, and the result cannot be sustained. The judgment is therefore reversed, and a new trial granted.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY, who sat in the case, took no part in this decision.